# DISTRICT OF COLUMBIA *v.* BALL.

PRACTICE; ACTIONS TO USE OF ANOTHER; OFFICIAL BONDS; ACTIONS ON; ESTOPPEL; INSPECTOR OF PLUMBING; DAMAGES; NEGLIGENCE; AMENDMENT; COSTS.

1. One who suffers injury by reason of the neglect of the inspector of plumbing of this District in the performance of his official duties may maintain an action in the name of the District of Columbia to his use on the bond given by the inspector, under a plumbing regulation requiring the inspector to give a bond in the sum of $5,000 "conditioned for the faithful performance of the duties of his office and for the benefit of all persons who may be aggrieved by his acts of neglect."

2. *Quære,* whether a surety on the bond of the plumbing inspector of this District is not estopped in an action on the bond to deny the validity of the bond upon the ground that the commissioners of the District had no power to pass the regulation requiring the inspector to give bond.

3. The provision of the plumbing regulations of this District, requiring the inspector of plumbing to give a bond with sureties for the faithful performance of his duties and for the benefit of all persons who may be aggrieved by his acts of neglect, is valid, and a bond so given is enforceable, although the act of Congress of April 23, 1892 (27 Stat. at L. 21, chap. 53), authorizing the commissioners to appoint an inspector of plumbing and to make plumbing regulations, does not require a bond to be given by the inspector to be appointed under its provisions.

4. One who purchases houses in which the plumbing is defective, without knowledge of that fact, may maintain an action on the official bond of the inspector of plumbing where he failed to inspect the plumbing when the houses were in course of construction, the damage to the plaintiff in such a case consisting of the increased price paid for the property upon the faith of the inspector's performance of his duty and the expense to which the plaintiff was put to place the property in the condition in which it would have been if the inspector had performed his duty.

5. A count in a declaration on the bond of the inspector of plumbing of this District, which charges the inspector with having entered upon the use plaintiff's premises and disconnected her house from the general sewerage system, is demurrable, especially where counsel for the plaintiff admits in open court that the inspector in so disconnecting the plumbing did no more than his official duty.

6. A count in a declaration by the District of Columbia to the use of another on the bond of the inspector of plumbing is demurrable which states that he negligently and wrongfully failed to inspect the plumbing of certain houses in course of construction so that improper connection was made of the plumbing with the general sewerage system, and also that subsequently he wrongfully and unlawfully condemned the plumbing and severed the connection whereby the houses were rendered untenantable to the damage of the use plaintiff; as a violation by the inspector of nis duty in the first instance would not make a subsequent performance of his duty wrongful and unlawful.

7. Where the declaration in an action by the District of Columbia to the use of another on the bond of the plumbing inspector for damages to the use plaintiff alleges negligent failure of inspection on the part of the inspector, but fails to properly state a good cause of action to the use plaintiff, it cannot be successfully contended by the use plaintiff that a sufficient cause of action is stated on behalf of the District of Columbia, upon which nominal damages could be recovered, as the mere breach of duty either by a public official or by a private person will not warrant the institution of suit against him without allegation and proof of damages sustained by the plaintiff in consequence of such breach of duty.

8. Although in an action by the District of Columbia to the use of another on the bond of the inspector of plumbing, the use plaintiff, on a demurrer to the declaration being sustained, elected in the trial court not to amend his declaration, but appealed from the judgment for the defendant which followed, and this court also held that the declaration was demurrable, the appellant was, nevertheless, given a second opportunity to amend the declaration because it was readily inferable from the declaration that a cause of action existed, although it was not properly stated; the appellant, however, being required to pay the costs of the appeal.

No. 1352.   Submitted October 21, 1903.   Decided November 4, 1903.

HEARING on an appeal by the use plaintiff in an action by the District of Columbia to the use of another on the bond of the inspector of plumbing of the District, from a judgment of the Supreme Court of the District of Columbia, after a demurrer to the declaration had been sustained and the use plaintiff had elected not to amend.   *Reversed upon condition that the appellant amend the declaration.*

The COURT in the opinion stated the case as follows:

This is a suit instituted by a private person, Augusta M.

Young, in the name of the District of Columbia, but to her use, upon the official bond of Charles B. Ball, late inspector of plumbing in this District, for alleged neglect of his official duty, whereby she claims to have been injured.

By an act of Congress of April 23, 1892 (27 Stat. at L. 21, chap. 53), the commissioners of the District of Columbia were authorized to appoint an inspector of plumbing in said District whose duty it should be, under the direction of the commissioners, to inspect, or cause to be inspected by his assistants, all houses in course of erection in said District, in order to see that the plumbing, draining, and ventilation of sewers thereof should conform to the regulations made by the commissioners in that regard.    And the commissioners were authorized by the act to make and enforce regulations in regard to plumbing, house draining, and the ventilation, preservation, and maintenance in good order of house sewers and public sewers in the District. The commissioners accordingly made and promulgated regulations on the subject, one of which provided that the inspector, upon his appointment, should make oath that he would faithfully perform the duties of his office, and that before entering upon the performance of said duties he should give bond to the District of Columbia in the sum of $5,000, with three sureties, to be approved by the commissioners, conditioned for the faithful performance of the duties of his office, and for the benefit of all persons who might be aggrieved by his acts of neglect.

Charles G. Ball, one of the appellees, was appointed inspector; gave bond, as required by the regulation of the commissioners, with Wilbur F. Nash, Charles D. Cole, and Daniel Fraser, as sureties; and entered upon the performance of the duties of the office, wherein he remained until after the occurrence of the alleged grievance of which complaint is sought to be made in this suit.

In the year 1899 one Horace T. Jones, being the owner of a piece of land in this city, commenced the construction of two houses thereon, which he finished in April of 1900.    He, or his contractors or agents, whether intentionally or unintentionally

does not appear, failed, in violation of the municipal regulations, to make proper connection with the general- sewerage system of the city; and it is alleged that the defendant Ball, during the time of the construction of the houses, neither inspected them nor caused them to be inspected.    Four days after their completion the houses were sold by Jones to Mrs. Augusta M. Young, the use plaintiff in this case, who is alleged to have had no notice, either actual or constructive, of this imperfect and improper sewerage construction. . Subsequently, on February 27, 1901, the inspector, or his assistants under his direction, acting under authority from the commissioners, entered upon the premises, and severed the connection between the plumbing and the general ·sewerage system.    Thereupon this suit was instituted upon ·the official bond of the inspector in the name of the District of Columbia, to which the bond was given, but to the use of Augusta M. Young, who alone is alleged to have been injured.

'The declaration is in two counts.    The first of these is to the effect that the inspector failed to inspect the houses or to cause them to be inspected at any time during their construction or at any other time; that subsequently to their erection Mrs. Young bought them without any notice of the defect, and that subsequently the inspector, through his subordinates, wrongfully and unlawfully condemned the plumbing, and disconnected the houses from the general sewerage system, whereby they were rendered untenantable, and the plaintiff was damaged.    The second count simply charged the inspector with having wrongfully and unlawfully entered upon the premises and disconnected the houses from the general sewerage system.

One of the sureties on the bond, Daniel Fraser, is understood to have died before the institution of the suit, and the suit is against the other three parties, the principal Ball and the sureties Nash and Cole.    Whether Ball and Cole appeared to defend the suit does not appear from the record before us.    Nash alone defends here.    He demurred and assigned four grounds of· demurrer, three of them amounting to an allegation that Mrs. Young was not entitled to maintain the suit in the name

of the District of Columbia for her own use without some author-
ity from the District to that effect.    The fourth is merely a
general allegation that no sufficient cause of action is stated in
the declaration.

The demurrer was sustained—upon what ground or whether
upon both grounds of objection does not appear—and the plain-
tiff having elected to stand by the declaration, judgment was
entered for the defendant.    Appeal to this court from the judg-
ment was thereupon noted on behalf of the plaintiff.

*Mr. Eugene A. Jones,* for the appellant:

1. By demurring, the defendant has admitted the right of the
plaintiff, the District of Columbia, to sue, the execution of the
bond, and the breach.    Can he by demurrer or otherwise raise
questions concerning the rights of the use plaintiff and the legal
plaintiff between themselves or rights between the use plaintiff
and the defendant, as is sought to be done by the first and second
causes of demurrer assigned?

The question is not whether a cause of action is stated between
Augusta M. Young and the defendant, but whether the declara-
tion states a cause of action between the District of Columbia
and the defendant.    The District of Columbia is the legal
plaintiff in the declaration, and all pleadings thereto must be
directed to the rights of the legal plaintiff.    *State to the use, &c.*
v. *Dorsey,* 3 G. & J. 75; *Fridge* v. *State to use, &c.* 3 G. & J.
104; *Logan et al.* v. *State to the use, &c.* 39 Md. 177; *Dashiell*
v. *The Mayor and City Council of Baltimore to the use of
Christian Hax & Son,* 45 Md. 615.

It is therefore contended that the naming of the use plaintiff
cuts no figure in the case one way or the other.    The defendant
cannot plead or demur to the use nor to the rights of the usee to
the fruits of the judgment as these are matters resting solely be-
tween the legal and the use plaintiffs.    If this contention be
correct, the case may be considered for the purpose of argument,
with the use plaintiff eliminated, and we have a suit by the Dis-
trict of Columbia on a bond given by the inspector of plumbing

conditioned for the faithful performance of certain duties and a breach of those conditions. This is surely sufficient to constitute a cause of action on the part of the District of Columbia.

"But," said counsel for the defendants in the argument below, "by what authority do you claim the right to bring a suit for the District of Columbia? You are not the attorney for the District of Columbia or authorized by law to bring suit in its behalf." Could such a question properly arise upon this record (there being nothing to indicate a lack of authority on the part of the plaintiff's attorney to occupy the position the record gives him), it would be answered by the decision of the Supreme Court of the United States in the case of *Osborn et al.* v. *The Bank of the United States,* 9 Wheaton, 740, where the court held that the authority to do so by an attorney who appears for a corporation is presumed, and it is unnecessary that a warrant or other evidence of it be shown on the record. See also to the same effect: *Henk* v. *Todhunter,* 7 G. & J. 275; *Ward* v. *Hollins,* 14 Md. 158; *Dorsey* v. *Kyle,* 30 Md. 512; *Corporation of Washington* v. *Young,* 10 Wheaton, 406. If the name of the District of Columbia has been used without its authority and improperly, it alone has the right to object, and this it may do either by injunction or by motion and rule to show cause. *Lynn* v. *Glidwell,* 8 Yerg. Tenn. p. 1; *Cage* v. *Foster,* 5 Yerg. Tenn. p. 261; *Harris* v. *Jaffrey,* 3 H. & J. Md. p. 543.

2. Under the law, a suit in the name of the District of Columbia to the use of another on the bond of the plumbing inspector, given to the District of Columbia, is authorized, and there is such privity between the use plaintiff and the defendants herein as will entitle the District of Columbia to maintain a suit for the use plaintiff. Act of Congress, June 25, 1881, Supplement R. S. U. S. vol. 1, p. 314; act of April 23, 1892, Supplement R. S. U. S. vol. 2, p. 10; act of February 26, 1892; plumbing regulations D. C. §§ 3 and 6. Even in the absence of this express authority for taking such a bond, the bond would be valid as a common-law obligation. *United States* v. *Tingey,* 5 Peters, 115. This case has been cited with approval in the following

cases:   *United States* v. *Bradley,* 10 Peters, 343; *United States* v. *Hodson,* 10 Wallace, 395; *United States* v. *Pumphrey,* 11 Appeals D. C. p. 44; *Tyler* v. *Hand,* 7 Howard, 573; *Jessup* v. *United States,* 106 U. S. 147; *United States* v. *Mora,* 97 U. S. 413.

3. Paragraph 6 of the regulations aforesaid gives authority by implication to any person aggrieved by the acts or neglect of the plumbing inspector to bring a suit on his bond. There could have been no other purpose in providing that the bond should be for the benefit of all persons who may be aggrieved by his acts or neglect; and to hold that a person so aggrieved has no remedy upon the instrument taken for his benefit would be to declare a right without a remedy.

But a person so aggrieved is entitled to sue upon the bond without any authority. *McMichen* v. *The Mayor, &c. of Baltimore,* 2 H. & J. page 41, and 3 H. & J. page 534; *Kierstad* v. *State to use, &c.* 1 G. & J. 232; *Ing* v. *State,* 8 Md. 287; *State* v. *Norwood,* 12 Md. 177.

The case of *The Corporation of Washington* v. *Young,* 10 Wheaton, p. 406, appears at first to decide the questions here before the court adversely to the contentions here made, but a slight examination discloses a clear distinction. That was not an action on a public official bond conditioned for the performance of public official duties in the performance of which the general public had an interest. The corporation of Washington in exacting the bond there was not exercising the powers usually and ordinarily exercised by municipal corporations; it was embarking upon a private financial enterprise, the net result of which, if successful, would put money in the treasury of the corporation; the office of lottery manager, by its ordinance created, was not a public office, nor were the duties to be performed by him in any wise public duties. The facts in that case clearly show that the bond there given was one for the sole benefit of the corporation of Washington in which the general public could not, by any possibility, have a general interest.

*Mr. E. H. Thomas, Mr. Harry G. Kimball,* and *Mr. Wm. Henry White,* for the appellee Nash:

1. The first count of the declaration shows that the negligence charged against the building inspector was at a time when he was under no duty whatever to use plaintiff, because she was not the owner of the property at the time of the alleged breach of duty. If no property or interest in the subject-matter of the suit be stated in the declaration to have existed, or been vested in the plaintiff at the time the wrong was committed, the omission will be fatal even after verdict; the objection being the total *omission,* not the *defective statement,* of a title. 1 Chitty Pleading, 379.

2. The second breach contained in the first count that the inspector of plumbing wrongfully condemned the plumbing, and the breach in the second count that he wrongfully disconnected the same, afford no ground of action. There is no allegation that the plumbing inspector failed to act in accordance with the plumbing regulations. It is therefore presumed that he acted under them. This action complained of could only have been done by the inspector of plumbing under the orders of the commissioners. The said breaches are but mere conclusions of the pleader without any matters of inducement to support them. *Bartlett* v. *Crozier,* 17 Johns. 439.

3. Under the statute and regulations the right of action, if any exists, is against the District of Columbia or the plumber who did the work, and not against the inspector of plumbing. The statute placed the inspector of plumbing and his assistants under *the direction of the said commissioners.* It is not enough in any case for a plaintiff, who seeks to recover for an injury caused by the negligence of another, to show simply injury and negligence; he must also show that there was a breach of duty. It is not sufficient to show a general public duty or a duty to some other person directly interested, for the public officer is liable on his bond only to the party to whom he is bound by the duty of his office. *State* v. *Harris,* 89 Ind. 363; *Savings Bank* v. *Ward,* 100 U. S. 195; *Cragin* v. *Lovell,* 109 U. S. 198, 199; *National Bank* v. *Grand Lodge,* 98 U. S. 123. So an overseer of the poor can not be sued by a pauper for his support because his action was a breach of public duty. *Van Nuis* v. *M'Collister,*

3 N. J. L. 371. The commissioners of the roads are not liable to a private action for neglect of duty. *Young* v. *Commissioners,* 2 Nott & M. (S. Car.), 537; *McConnell* v. *Dewey,* 5 Neb. 385; *Bartlett* v. *Crozier,* 17 Johns. 439. The District of Columbia might be liable for the negligence of the inspector of plumbing because power is vested in him, not as individual or as an independent public officer, but for the reason that the grant is a part of the municipal power. *Conrad* v. *Trustees,* 16 N. Y. 158 and note at p. 162. The lowest reliable and responsible bidder for a contract for public work has no such vested or absolute right to a compliance with such provisions of the statutes as will enable him to maintain an injunction against their violation by public officials, because these provisions of the statute were not enacted for his benefit, or for the benefit of his class. *Colorado Pav. Co.* v. *Murphy,* 78 F. R. 28. The plaintiff must show that the defendant owed the duty to him personally. Wherever an action is brought for a breach of duty imposed by statute, the party bringing it must show that he had an interest in the performance of the duty, and that the duty was imposed for his benefit. But where the duty was created or imposed for the benefit of another, and the advantage to be derived to the party prosecuting, by its performance, is merely incidental, and no part of the design of the statute, no such right is created as forms the subject of an action. *Strong* v. *Campbell,* 11 Barb. 135, 138. The declaration shows that "said houses were not in fact connected with the public sewerage system of the District of Columbia in the manner prescribed by the plumbing regulations and the laws of the District of Columbia," so that in disconnecting such plumbing the inspector was simply performing his duty. His action, we submit, was quasi judicial in its nature and the inspector cannot be subjected to suit therefor.

4. The District of Columbia had no power to make the regulation requiring the inspector of plumbing to give the bond in suit for the benefit of any third party. *Fowle* v. *Alexandria,* 3 Pet. 407. The corporation has no power to pass an act offering a reward for the apprehension of a criminal. *Baker* v. *City,* 7 D. C. 134. "Where, however, they act outside of the premises

their power ceases." "They do act outside of the premises whenever they undertake to do that which is foreign to the purposes of their creation." *Id.* 139; *Bates* v. *D. C.* 1 MacA. 433; *In re Hennick,* 5 Mackey, 502; *Roach* v. *Van Riswick,* 7 W. L. R. 496; *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *Johnson* v. *D. C.* 6 Mackey, 21. Thus the commissioners have no power to submit a claim to arbitration. *D. C.* v. *Bailey,* 171 U. S. 161-176. See also *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *Minturn* v. *Larue et al.,* 23 How. 435; 21 Ency. Law, 2d ed. 950.

5. The bond is not good as a voluntary bond. The contract contained in the bond was not made with the use plaintiff. The bond has two purposes, one the faithful and efficient performance of all the duties of his office, and the other that he will well and truly pay over, disburse, and account for all moneys. It is given to the District of Columbia, and nowhere does it recite or indicate that it is for the benefit of any other person whatsoever. 15 Am. & Eng. Enc. P. & P. 516, 517. If the bond had been given to the United States for its benefit, or for the wards of the nation, a different rule might prevail. *U. S.* v. *Pumphrey,* 11 App. D. C. 44; *Tyler* v. *Hand,* 7 How. 573. No person who is not the proprietor of an obligation can have a legal right to put it in suit unless such right be given by the legislature, and no person can be authorized to use the name of another without his assent given in fact or by legal intendment. *Washington* v. *Young,* 10 Wheat. 409; *Harshman* v. *Winterbottom,* 123 U. S. 220; *McRea* v. *McWilliams,* 58 Texas, 328; *County* v. *Bushnell,* 15 Oreg. 169, 170, 171.

In the court below reliance was placed by the attorney for the plaintiff Young on certain Maryland cases. These decisions, even if applicable, constitute simply a rule in the State of Maryland and, as conceded in *State* v. *Norwood,* 12 Md. 177, are contrary to the ruling of the Supreme Court of the United States in like cases relating to the District of Columbia.

There was no appearance for either of the other appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. We think that the so-called use plaintiff was authorized in law to use the name of the District of Columbia as the nominal plaintiff in this suit.

While the office of inspector of plumbing was created by act of Congress, and his general duties were prescribed by the same enactment, yet he was to be appointed by the commissioners, to be responsible to them, to act under their orders, and to be subject to such regulations as they should ordain. Plainly, his office is one of great responsibility, and upon the faithful performance of its duties may depend, to a very large extent, the health and welfare of the community. The subject-matter of inspection is usually hid away from the ordinary view after the conclusion of the work of construction, and defects in it can generally be detected only by those expert in such work, or by their deleterious effects upon the neighborhood and the community. Those who afterwards deal with the property, either as occupants or as purchasers, have usually no means of determining whether such work has been properly performed, for the defects are, or may be, entirely latent, and beyond the scope of ordinary observation. It is most important, therefore, that the inspector be held to a rigid accountability for the faithful performance of his duties, and that such performance be enforced by all proper and reasonable precautions.

With this result in view, and in order to secure it, the commissioners have thought proper to make the regulation, which prescribes, as already stated—

"That the inspector of plumbing shall make oath that he will faithfully perform the duties of his office, and shall, before entering upon said duties, execute a bond to the District of Columbia in the sum of $5,000, with three sureties, to be approved by the commissioners, conditioned for the faithful performance of the duties of his office, and for the benefit of all persons who may be aggrieved by his acts of neglect."

Under this regulation it seems to us to be very plain that the official bond required of the inspector, although executed to the District of Columbia as the obligee, was intended, not alone for the protection of the District as a municipality, but likewise, and perhaps more generally and more frequently, for the pro-

tection of individuals who would have to deal with property on the faith of the due performance of his duty by the inspector, and who should suffer damage from his neglect or failure to perform such duty. While the health and welfare of the community as a whole might be largely affected by the neglect of the inspector to perform his duty, it is not apparent that in any special instance the District has any interest which could at all suffer from any such non-performance of duty. On the other hand, individuals might suffer quite frequently from official neglect of the inspector. The owner of the property might be injured by the ignorance or fraud of an incompetent plumber. Subsequent occupants and purchasers, knowing nothing of the latent defect, might be injured, or might find it necessary, as the use plaintiff in this case has found, to make large repairs in order to have the work done as it should have been done in the first instance, and as it would have been done if the inspector had performed his duty. Unless, therefore, the requirement of a bond from the inspector was for the protection of such individuals, we fail to find that there would be any great reason at all for such a requirement. We think that the plain language of the regulation made by the commissioners provides that the inspector's bond shall be for the use and benefit of individuals aggrieved by the inspector's neglect; and that the regulation is in effect a consent in advance to any person aggrieved to use the name of the District in a suit for his use and benefit. We see no distinction in principle between the inspector's bond in this case and a sheriff's bond, which, although given to the State, is liable to be put in suit in the name of the State to the use of any person aggrieved by his malfeasance or non-feasance of his official duty.

It is suggested, however, on behalf of the appellees that the regulation in question is one beyond the power of the commissioners to make, and is therefore a nullity; and that therefore the bond given in pursuance of it is equally a nullity. But if the defendants, having given the bond and having procured the office of inspector for their principal on the faith of their being so bound to the District and to individuals, are not now estopped

by their conduct from denying its validity, in regard to which we need express no opinion, we find no ground whatever on which to question the reasonableness and validity of the regulation.    The duties of the office, as we have seen, are such as to justify the commissioners in seeking to surround them with all possible precautions.    Congress, having provided for the appointment of an inspector by them, remitted the whole subject-matter to them for regulation.    And it is not apparent to us why they should not have required a bond before they allowed any man to enter upon so responsible a position.    It is not necessary that the requirement of a bond for the faithful performance of duty should be prescribed by statute.    Private individuals in the conduct of their private business may validly prescribe such a requirement as a condition precedent to the appointment of a person to a responsible office in their service; and it is not apparent why a municipality with vastly greater responsibilities, might not properly do so, when it is given authority to make all reasonable rules and regulations on the whole subject-matter.    As well might it be argued that the commissioners can not prescribe an oath of office for the inspector, as that they can not prescribe a bond.    The argument which would overthrow the one will overthrow the other.    The act of Congress provides in terms for neither oath nor bond.    Are the commissioners, therefore, when they have been given so extensive a power of regulation, to be precluded from seeking to throw any of the usual safeguards around the office of the inspector to secure the faithful performance of his duties by him ? We do not think that either reason or authority requires the denial of such power to the commissioners.

We are of opinion, therefore, that the use plaintiff in this case, if she was in fact aggrieved by any negligence of the inspector, was authorized to institute this suit on his official bond in the name of the District.

2. But the question remains whether she has stated in her declaration a legal grievance against the inspector.    In view of the admission of counsel for the appellant in open court of what was undoubtedly the fact, that the inspector, in disconnecting

the plumbing in the houses in question from the general sewerage system, did no more than his official duty under the order of the commissioners, we fail to see that there is any cause of action whatever stated in the second count of the declaration. Beyond question, the demurrer was properly sustained as to that count.

3. As to the first count in the declaration, that also is open to serious criticism. While there is a recital in it, or an allegation, that the inspector neglected and failed to inspect the houses, or cause them to be inspected, and that in consequence of such failure improper connection was made of the plumbing in the houses with the general sewerage system, yet the gravamen of the charge is that the inspector wrongfully and unlawfully condemned the plumbing and severed the connection, whereby the houses were rendered untenantable and the use plaintiff was damaged. Now, when it is conceded, as it has been, that the inspector, in the condemnation of the plumbing in the houses and in the severance of the connection with the sewerage system, was wholly within the line of his duty, it would seem that the whole allegation must fail. Moreover, apart from the concession that the inspector did no more than his duty when he condemned the plumbing and severed the connection, there is a manifest inconsistency between the several statements of the declaration. If we assume, as the declaration alleges, that the inspector did in fact negligently and wrongfully fail to inspect the plumbing in the houses while they were in the course of construction, yet it would be none the less his duty, under the order of the commissioners, to condemn the work and sever the connection when occasion arose for such action, and his action in so doing can not with any propriety be characterized as wrongful or unlawful. A violation of duty in the first instance can not make the subsequent performance of it wrongful or unlawful. Upon the failure to inspect at the proper time, which necessitated the subsequent condemnation and severance, and not upon this subsequent action as in itself a grievance, can the declaration properly be based.

If the allegation of neglect on the part of the inspector to

cause the proper inspection to be made of the premises in question at the proper time is well founded, there is in the declaration sufficient to show that the use plaintiff may have been damaged by the neglect; but it has not been sufficiently or properly stated. The real damage to the use plaintiff was not in the condemnation of the plumbing and the severance of the connection, which were both lawful and may indeed be regarded as having been for the benefit of the property and of the plaintiff as its owner, but in the increased price which she paid for the property upon the faith of the inspector's performance of his duty, or in the expense to which she was put to place the property in the condition in which it would have been if the inspector had performed his duty.

On behalf of the appellant, however, it has been argued that so much of the first count of the declaration as refers to the purchase of the property by Mrs. Young and the subsequent condemnation and severance of the plumbing may be regarded as surplusage; and that as the District of Columbia is, as claimed, the real plaintiff, and negligent failure of inspection is alleged, a sufficient cause of action on behalf of the District is stated, upon which nominal damages, and only nominal damages, could be recovered. It is unnecessary to pursue this argument into the citation of authorities which are adduced in support of it. It must suffice to say, as to them, that, in our opinion, the authorities cited are not applicable to the question in issue.

Courts of law cannot regard with favor suits instituted merely to mulct defendants in costs, such as this would undoubtedly be under this theory of the appellant; and least of all can it be tolerated that official bonds can be made the basis of such suits and the name of the State or the municipality used without warrant by private parties, who can assign no damage to the State or municipality and who have no individual interest themselves in the subject-matter of suit. It is a well-established rule of law that a mere breach of duty, either by a public official or by a private person, will not warrant the institution of suit against him, without allegation and proof of damage sustained by the plaintiff in consequence of such breach

of duty.    No damage of any kind is here alleged to have ac-crued to the District of Columbia; the sole damage alleged is to the use plaintiff.    Consequently, if the latter be stricken out, no cause of action is stated.

From what we have said, it follows that, while the use plain-tiff is justified in law in putting the inspector's official bond in suit for neglect of duty causing damage to her, and in using the name of the District of Columbia for the purpose, yet that the declaration is demurrable in not properly stating a good cause of action in the use plaintiff.    But at the same time it is readily inferable from the declaration that such cause of action does or may exist.    It would seem, therefore, to be in the interest of justice that the plaintiff should have an opportunity to amend the declaration.    That opportunity, it is true, was given to the plaintiff in the court below, and was rejected or refused, prob-ably under a mistaken view as to her rights in the premises.    We think that, in the interest of justice, and under the very liberal provisions of the statute in regard to amendments, that opportu-nity may properly be allowed again; although it will not do to experiment with the right of appeal in anticipation of the subse-quent allowance of amendment.    Such allowance will be used sparingly, and only when the interests of justice seem very plain-ly to demand it.

If the appellant here, who is the plaintiff in the court below, will file in this court within ten days a notice of her intention and willingness to amend the declaration in accordance with the views expressed in this opinion, the judgment appealed from will be reversed, and the cause will be remanded for the purpose of such amendment and for further proceedings therein accord-ing to law.    But if the appellant will not file such notice within the time specified, the judgment will be affirmed.    In either case the appellant must pay all the costs of the appeal.    And it is so ordered.

[The appellant filed the notice required by the foregoing opin-ion, and the judgment appealed from was reversed.—REPORT-ER.]